**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF UTAH**

FILED
CLERK, U.S. DISTRICT COURT

2005 SEP 22  P 2: 51

DISTRICT OF UTAH
BY:_____ *Ce*
DEPUTY CLERK

FADI SAMHOURI,

       Plaintiff,

vs.

       No. 03-CV-468  JC

SALT LAKE COUNTY and
SERGEANT JIM WINDER,

       Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Defendant's Motion for Summary Judgment*, filed June 30, 2004 (*Doc. 21*) ("Motion"). The Court, having considered the Motion, the memoranda, and the relevant authority, finds the Motion partly well-taken and it is, therefore, granted in part and denied in part.

**I.    Background**

The following facts are either undisputed or viewed most favorably to Plaintiff. Plaintiff is a Canadian citizen residing in Salt Lake City, Utah. Plaintiff is of Arabic race and Middle Eastern (Jordanian) ethnicity. At some time prior to July 12, 2002, Lieutenant Rodney Norton of the Salt Lake County Sheriff's Department gave his approval for Sergeant Jim Winder to participate with Special Agent ("SA") Weiss, Federal Bureau of Investigation ("FBI"), in the investigation of Plaintiff as a suspected terrorist. Winder had no prior training or experience in the area of federal

immigration law. Winder Aff. P. 3, ¶ 8. Norton believed Winder's participation would enable Winder to "stay fresh" in his investigative skills. Norton Dep. at 6:24-7:8; Winder Dep. at 5:19-21. Winder's investigation of Samhouri was not supervised by anyone in the Salt Lake County Sheriff's Office. Winder Aff. at p. 3.

SA Weiss provided Winder with the name and address of a gas station where she had determined Plaintiff worked and asked Winder to interview Plaintiff. Winder's purpose in conducting the interview was to make a positive identification of Plaintiff and obtain any information he could about Plaintiff. Winder Aff. at ¶4. Winder interviewed Plaintiff on July 12, 2002. Later the same day, Winder prepared a written memorandum summarizing the interview and forwarded it to SA Weiss. That memorandum contained the following sentence: "Mr. FADI [sic] also informed me that he was a naturalized citizen, and that he had the Canadian License [sic] from when he was still a resident of Canada." Winder Aff., ¶7; Ex. A thereto. At the time he conducted the interview and authored the above referenced memorandum, Winder was unaware that falsely and willfully representing oneself as a United States citizen constitutes a federal crime pursuant to 18 U.S.C. §911. Plaintiff was not, in fact, a naturalized U.S. citizen at the time of the interview, but was a citizen of Canada. Plaintiff denies that he ever told Winder that he was a naturalized U.S. citizen.

The case was reviewed by Assistant United States Attorney (AUSA) Robert Lunnen of the U.S. Attorney's Office in Salt Lake City. On August 6, 2002, SA Weiss spoke with Winder, discussed his intent to arrest Plaintiff, expressed that Winder's report of Plaintiff's professed U.S. citizenship was the basis for the arrest, and communicated that Winder's testimony at trial regarding Plaintiff's misrepresentation of citizenship would be required. SA Weiss told Winder that Plaintiff

2

would be arrested on authorization of the U.S. Attorney's Office "if he [Winder] would have no problem testifying to the statement that Fadi Samhouri had made to him on July 12th" and "if he [Winder] would agree to testify about Mr. Samhouri's representation to him about his citizenship." Weiss Dep. at 23:5,18:5-10. According to SA Weiss, Winder responded "absolutely" that he would "have no problem." *Id.* at 18:16-18; *See also* Pl's Resp., Ex. 5 at pp. 102. AUSA Lunnen testified at deposition that while the federal criminal prosecution was pending, Lunnen and Winder conversed frequently about Winder's anticipated trial testimony establishing that Plaintiff had told him that he was a naturalized citizen of the United States. Lunnen Dep. at 19:23-20:5.

On August 7, 2002, Lunnen filed a complaint in the United States District Court for the District of Utah against Plaintiff, based in significant part, if not entirely, on a probable cause affidavit by SA Weiss, for violation of 18 U.S.C. §911.[1] Indeed, Winder's representation that Plaintiff had told him he was a citizen was the "most important" information upon which Lunnen relied when drafting the complaint against Plaintiff. Lunnen Dep. at 9:8-23. Sergeant Winder reviewed the complaint with SA Weiss and AUSA Lunnen before it was filed, and together the three met with Magistrate Judge Boyce. Based upon the complaint, Magistrate Judge Boyce signed an arrest warrant and a search warrant.

Plaintiff was arrested in Provo, Utah on August 12, 2002, by SA Weiss and Sergeant Winder. Evidently more than a dozen officials were present at Plaintiff's home for the arrest and search. Plaintiff's arrest was made public through media broadcasts and newspaper publications.

---

[1]§911. **Citizen of the United States.** Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both.

Immediately following Plaintiff's arrest, SA Weiss interviewed Plaintiff at which time she noted that Plaintiff "...stated he had recently applied to become a naturalized citizen of the United States. He stated he was a few weeks away from obtaining his citizenship." Weiss Dep. at 34:8-35:24. Later that day, Plaintiff was booked into the Salt Lake County Adult Detention Complex where he was held pending trial.

On September 20, 2002, SA Weiss visited Sergeant Winder at his home, discussed the upcoming trial, and Winder "once again, stated he was prepared to testify against [Plaintiff]." Resp., Ex. 5. After that visit, however, numerous calls from SA Weiss to Sergeant Winder went unreturned.

On October 3, 2002, Lunnen contacted Winder by telephone to prepare for trial and, for the first time, Lunnen asked Winder if he could testify to the *exact* words Plaintiff had used when stating that he was a U.S. citizen. Winder said that he could not recall the precise words used by Plaintiff during the interview. Believing Winder's testimony would, therefore, be insufficient to proceed to trial against Plaintiff, Lunnen moved for and obtained an order of dismissal on October 3, 2002. Plaintiff was then released from ADC. On October 9, 2002, the federal indictment against Plaintiff was dismissed, though Plaintiff continued to be detained at the request of INS until October 18, 2002.

Sergeant Winder presently represents that he "made the assumption that [Plaintiff] was a citizen" based upon Plaintiff's statements during the July 12, 2002 interview and that his written statement to SA Weiss in his initial report was a "synopsis of the events that occurred in a very brief interview with the party." Winder Dep. at 23:20-24:22. The following is an excerpt from Sergeant Winder's February 11, 2004 deposition:

4

Q.      Do you remember what if anything he [Samhouri] told you about being a
        naturalized citizen?

A.      I recall the inference being that he was a legal U.S. citizen.

Q.      And what did he say that caused you to infer that he was a naturalized citizen,
        or that he was maintaining that he was a naturalized citizen?

A.      His general comments about his working situation. He provided what I recall
        as a social security number, indicated a lengthy stay here in the United States,
        family associations, business associations and ownerships. All of this tended
        to lead me to believe that he was a person here under legal circumstances.

Q.      So I take it he didn't state specifically that he was a naturalized citizen. Is
        that right?

A.      Not to my recollection, sir.[2]

Winder Dep. at 15:4-22. Winder never told Lunnen or SA Weiss that his representation as to what

Plaintiff said was, as he now maintains, based upon inference. Lunnen Dep. at 13:17-20, 14:15-19;

Weiss Dep. at 26:16-24; Winder Dep. at 24:16-22, 42:13-21.

Plaintiff filed this action on May 20, 2003, alleging Deprivation of Constitutional Rights

against Sergeant Winder in his individual and official capacities (Count I) and Salt Lake County and

the Salt Lake County Sheriff's Department (Count II).[3] Defendants presently move the Court for

summary judgment disposition in their favor.

## II.      Legal Standard

A party is entitled to summary judgment on all or any part of a claim as to which there is

no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter

of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). For

---

[2]Deposition testimony notwithstanding, Winder does not concede that Plaintiff never
actually claimed U.S. citizenship. Mem. at 13.

[3]Recognizing that the County and the Sheriff's Department are inseparable for purposes
of this litigation, the parties stipulated to the dismissal of Salt Lake County Sheriff's Office as a
Defendant. *See Stipulation of Dismissal as to Def. Salt Lake County Sheriff's Office*, filed
August 3, 2005 (*Doc. 7*).

purposes of a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party. *Id.* The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim, as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf,* 53 F.3d 1531, 1546 (10th Cir. 1995). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 597.

## III.   Discussion

Plaintiff alleges violations of his rights under the Fourth and Fourteenth Amendments of the United States Constitution and brings this action pursuant to 42 U.S.C. Section 1983. His claims arise out of his groundless incarceration, the humiliation he suffered as a result, actual damages, and damage to his reputation. Plaintiff claims that Winder recklessly or willfully made false allegations against him, based on his race or ethnicity, which Winder knew formed the basis for the probable

6

cause necessary to effectuate his arrest.  Plaintiff further contends that inadequate training, policies, and procedures by the County facilitated Winder's unlawful conduct, creating Section 1983 liability directly against the County.

A.      *Sergeant Winder*

42 U.S.C. Section 1983 creates a cause of action against persons who, acting pursuant to state government authority, violate federal law.  Plaintiff claims unlawful seizure and prosecution in violation of his rights under the Fourth Amendment as well as violation of his right to procedural due process under the Fourteenth Amendment.

Defendants posit that Winder's ignorance of the federal statute making it a crime to misrepresent one's U.S. citizenship, in conjunction with the fact that Winder was not asked until October 2002 to recall the exact words Plaintiff used, vitiate Plaintiff's claim that Winder falsely reported the information to "procure" Plaintiff's arrest and detention.  Defendants assert that Plaintiff's statements to Winder during the July 12, 2002 interview "led Winder to an honest and good faith impression, conclusion and belief that Plaintiff represented himself as a naturalized U.S. citizen." Mem. at 13.  In sum, "it is Winder's position that *if* he incorrectly reported Plaintiff's statement, the error was unintentional, and was the result of a mistaken impression or misunderstanding." *Id.* (citing Winder Aff., ¶9) (emphasis in original).  Defendants focus exclusively on Winder's state of mind at the time he made the initial report to SA Weiss when arguing that Winder "would have had no reason to give heightened attention to Plaintiff's statement in order to verify that he had correctly understood it." *Id.* at 16.

Plaintiff responds, and the Court agrees, that even if Winder did not know of the crime when making his initial report to SA Weiss, shortly thereafter Winder learned not only that the federal

7

statute existed, but understood that based upon his rendition of Plaintiff's statements, the government had arrested, detained, and intended to prosecute Plaintiff. It is not Winder's initial report itself that gives rise to Plaintiff's allegations. Instead, it is his failure to correct any misrepresentation therein regarding what Plaintiff in fact said, as opposed to what Winder *inferred* from Plaintiff's comments about his job and family, that forms the gravamen of Plaintiff's claims against Winder. Plaintiff alleges that, at best, Winder allowed the prosecution to labor under a known misconception of Winder's creation to Plaintiff's detriment.

If Winder was instrumental in Plaintiff's continued prosecution while knowing that the basis for probable cause was erroneous or questionable, he cannot escape liability simply because he did not himself file the criminal complaint. *See Pierce v. Gilcrest*, 359 F.3d 1279 (10th Cir. 2004). Nor is the fact that Winder was not asked to recall the specific words used until October 2002 dispositive. The government's dismissal of the indictment upon learning that testimony from Winder on the precise language used by Plaintiff was unattainable bears on the analysis here, for it establishes that Winder's testimony was the *sine que non* for proving Plaintiff guilty at trial. Moreover, Winder's lack of training in federal laws is inapposite for purposes of determining whether Winder knew his rendition of Plaintiff's statements was key to the prosecution. Legal knowledge or expertise aside, common sense might dictate that Winder knew the accuracy of his information was crucial once the charge against Plaintiff became known to him. Winder's statement formed the primary, if not sole, basis of the probable cause showing necessary to arrest and indict Plaintiff. Expertise in the area of federal immigration law is not necessary for one to recognize that "willfully" representing oneself is an element of the crime with which Plaintiff was charged. If miscommunication due to a language barrier was at work during the interview, as Defendants contend it was, the need for Winder to

8

communicate to SA Weiss and AUSA Lunnen exactly what was said is even more apparent.

The question is whether Winder's failure to timely clarify could be construed by a reasonable jury as intentional or reckless conduct in violation of Plaintiff's constitutional rights. The Court finds, on the evidence marshaled and the applicable law, a reasonable jury could find that Winder either made false representations or omitted exculpatory information, knowingly or with reckless disregard for the truth, in violation of Plaintiff's constitutional rights. Therefore, summary judgment in Defendants' favor is improper on Plaintiff's claims against Sergeant Winder.

B.      The County

For a municipality to be liable under Section 1983, a plaintiff "must show 'that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action.'" *Ledbetter v. City of Topeka, Kn.*, 318 F.3d 1183, 1189 (10th Cir. 2003) (citations omitted). A municipality cannot be held liable for the actions of its employees under a theory of *respondeat superior. See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). When, as here, a plaintiff asserts that the alleged custom or policy was a failure to act, the plaintiff must demonstrate that the alleged inaction resulted from "deliberate indifference to the rights" of the plaintiff. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Further, a municipality's deliberately indifferent failure to train is not established by (1) presenting evidence of the shortcomings of an individual (for the officer's shortcomings may have resulted from factors other than a faulty training program); (2) proving that an otherwise sound training program occasionally was negligently administered; or (3) showing, without more, that better training would have enabled an officer to avoid the injury-causing conduct. *Id.* at 391.

9

A county may be held liable for a single constitutional violation if a final policymaker ratified a subordinate's actions and, in so doing, approved of his conduct as the policy of the county. *See, e.g., City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). To establish ratification, a plaintiff must show that the county or its policymakers implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officer.

Plaintiff asserts that the County is liable by virtue of (1) a policy of non-supervision or training when a member of the Sheriff's Office participates in an investigation with an outside agency; and (2) its ratification of Winder's conduct by not conducting an investigation upon receiving Plaintiff's statutory notice of claim. Indeed, Winder was permitted to participate in the FBI investigation without any training or experience in immigration law, and it is undisputed that the Sheriff's Office did not conduct an administrative investigation following receipt of the notice of claim. Instead, because the notice serves as a predicate to filing a civil action,[4] it was treated as a litigation matter and forwarded to the District Attorney's Office. The notice of claim is the only means by which Plaintiff's allegations were brought to the attention of the Sheriff's Office.

Defendants first assert that because there exists no liability on the part of Winder in their view, the County cannot be held liable vicariously. This argument must fail, for the Court has determined a genuine issue of material fact exists as to whether Winder's conduct violated Plaintiff's constitutional rights. Defendants next assert, and the Court agrees, that even given liability on the part of Winder, Plaintiff's claim against the County still fails for lack of sufficient evidence establishing a policy or custom violative of Plaintiff's rights. Finally, Defendants contend that

---

[4]Though the notice is not required for this Section 1983 litigation. *See* Utah Code Ann., Sec. 63-30-11, *et seq.*

10

retaining Winder as an employee, without more, is insufficient proof that Winder's alleged unconstitutional conduct was ratified by the county in this case. Again, the Court agrees.

Given the limited facts and evidence presented by Plaintiff in support of his claim for municipal liability, as distinguished from his unsupported and conclusory allegations, a reasonable jury could not find the County liable. Thus, there is no genuine issue of material fact in need of resolution at trial and Count II of Plaintiff's Complaint is dismissed as a matter of law.

WHEREFORE,

**IT IS ORDERED** that *Defendant's Motion for Summary Judgment*, filed June 30, 2004 (*Doc. 21*) is GRANTED IN PART such that Count II of Plaintiff's Complaint is dismissed with prejudice; and DENIED IN PART as to Count I.

Dated September 19, 2005.

SENIOR UNITED STATES DISTRICT JUDGE
Sitting by Designation